FILED
5/12/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | No. 95 CR 509 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RUSSELL ELLIS | ) | |

### MR. ELLIS'S SUPPLEMENTAL REPLY IN SUPPORT OF A REDUCTION UNDER SECTION 404 OF THE FIRST STEP ACT

Russell Ellis, by the Federal Defender Program and its attorney, Santino Coleman, respectfully submits this supplemental reply in support of a reduction under the First Step Act. Mr. Ellis seeks this reduction after serving nearly 25 years in prison,[1] away from a supportive community of family and friends. Upon his return home, Mr. Ellis will settle into his role as a father, grandparent, and brother. These aspects of Mr. Ellis's life, his remorse for the mistakes of his past, his declining health, and the substantial length of time he has already served in prison, demonstrate that a reduced sentence of time served is appropriate in this case. Given these circumstances and because Mr. Ellis satisfies the criteria for relief, this Court should exercise its discretion to impose a reduced sentence of time served.

**I.  Mr. Ellis meets all of the requirements for a reduced sentence under Section 404 of the First Step Act.**

Mr. Ellis satisfies each of the requirements necessary for relief under Section 404:[2]  (1) he

---

[1] Mr. Ellis has been in federal custody since November 21, 1995 (24 years, 5 months, 19 days ago).

[2] Section 404 provides that "a court that imposed a sentence for a covered offense may, on motion of . . . the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 11-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." The term "'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." Pub. L. No. 115-391, 132 Stat. 5194.

was convicted of covered offenses committed before August 3, 2010; (2) he was sentenced pursuant to penalties for those offenses in effect before August 3, 2010; and (3) he did not previously file a motion under Section 404.[3] Having met these requirements, Mr. Ellis is eligible for relief under the First Step Act.

Despite satisfying the above criteria, the government argues that Mr. Ellis is ineligible for relief because (1) he was convicted and sentenced pursuant to 21 U.S.C. § 848 (Count 2); and (2) the drug quantities for which Mr. Ellis was held accountable at sentencing continue to support the previously imposed sentence. These arguments attempt to sidestep and obscure the central inquiry in this case: whether Mr. Ellis was convicted of a covered offense. As further detailed below, he was.

> II. **Mr. Ellis was convicted of "covered offenses" and is eligible for relief under the First Step Act.**

Under the First Step Act, a conviction pursuant to 21 U.S.C. § 848 (continuing criminal enterprise or "CCE") is a "covered offense." Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine necessary to trigger mandatory minimums. For a mandatory minimum sentence of 5 years, the threshold quantity increased from 5 grams to 28 grams. 21 U.S.C. § 841(b)(1)(B).

---

[3] Section 404 contains the following limitation: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Pub. L. No. 115-391, § 404(c), 132 Stat. 5194.

And, for a mandatory minimum of ten years, the threshold quantity increased from 50 grams to 280 grams. 21 U.S.C. § 841(b)(1)(A).

The impact of section 2 of the Fair Sentencing Act was not limited to 21 U.S.C. § 841. Statutes with penalty provisions that incorporate by reference the cocaine base quantities set forth in § 841 were also modified by the Fair Sentencing Act. In particular, the penalty provision under the CCE statute requires proof that the violation "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." 21 U.S.C. § 848(b)(2)(A). Under the Fair Sentencing Act, the quantity of cocaine base required to satisfy that provision was increased from 1.5 kilograms to 8.4 kilograms. Similarly, § 848(b)(2)(B) requires proof that the enterprise "received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B)." Thus, this penalty provision requires violation of 841(b)(1)(B), which was necessarily modified by the Fair Sentencing Act where, as here, the offense involved distribution of cocaine base.

Simply put, the statutory penalties for CCE are tied to and incorporate by reference the statutory provisions that were "modified by section 2 or 3 of the Fair Sentencing Act." As such, § 848 is a "Federal criminal statute" in which the "statutory penalties . . . were modified by section 2" of the Fair Sentencing Act, and therefore constitutes a "covered offense" under the First Step Act.[4]

Assuming for the sake of argument that this Court were to conclude that Count 2 (CCE) is not a covered offense (which Mr. Ellis does not concede), Mr. Ellis would still be eligible for relief.

---

[4] First Step Act relief has been granted in other cases in this district where mandatory life sentences were previously imposed pursuant to 21 U.S.C. § 848(b). *See United States v. James Yates*, 95-CR-00510, Dckt. No. 2061 (N.D. Ill. Apr. 22, 2020); *United States v. Cedric Park*, No. 95-CR-00510, Dckt. No. 2046 (N.D. Ill. Apr. 7, 2020).

The First Step Act authorizes resentencing on all counts when at least one of the counts is a covered offense. Mr. Ellis was found guilty of multiple counts of violating 21 U.S.C. § 841(a)(1), some of which involved distribution of crack cocaine. In *United States v. Biggs*, No. 05-CR-316, 2019 WL 2120226 (N.D. Ill. May 15, 2019), the court found that Mr. Biggs was eligible for relief with respect to a non-covered offense because of his conviction for a "covered offense." In *Biggs*, the court explained that at sentencing it "considers multiple counts together" and imposing a reduced sentence "as if . . . the Fair Sentencing Act were in effect entails resentencing on all counts." *Id.* at 3 (internal quotation marks omitted). Thus, Mr. Ellis is eligible for relief on all counts because he was convicted under § 841(a)(1) for distribution of crack cocaine, which are "covered offenses."

The government also argues that the drug quantities found at sentencing preclude relief in this case. Contrary to the government's argument, "the vast majority of courts to have examined the issue . . . held that eligibility under Section 404 of the Act is determined categorically, based on the statute of conviction, rather than individually, based on the defendant's offense conduct." *United States v. Evans*, No. 04-CR-464, Dckt. No. 2694, *1 (N.D. Ill. Oct. 18, 2019). Adopting this categorical approach, the Seventh Circuit recently held that "the statute of conviction alone determines eligibility for First Step Act relief." *United States v. Shaw*, 2020 WL 2029258, at *4 (7th Cir. 2020).

### III. The Court has authority under the First Step Act to resentence Mr. Ellis in accordance with the principles in *Apprendi* and *Alleyne*.

Mr. Ellis was sentenced to mandatory life imprisonment based on judicial factual findings,[5] a practice that is constitutionally impermissible. In *Apprendi v. New Jersey*, 530 U.S. 466, 490

---

[5] At sentencing, Judge Paul Plunkett found that the government's evidence satisfied § 848(b)(1), § (b)(2)(A), and § (b)(2)(B).

(2000), the Supreme Court held that any fact that increases the penalty beyond the statutory maximum must be proven beyond a reasonable doubt. Extending the *Apprendi* rule in *Alleyne v. United States*, 570 U.S. 99, 103 (2013), the Supreme Court held that "any fact that increases the mandatory minimum is an "element" that must be submitted to the jury" and found beyond a reasonable doubt.

These constitutional principles apply in First Step Act proceedings. When Congress passed the First Step Act, it knew "courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing," and "would not have expected federal courts to then double-down on those unconstitutional findings in applying the First Step Act." *United States v. Williams*, No. 08-CR-00401-4, 2019 WL 4014241, at *5 (N.D. Ill. Aug. 25, 2019).[6] Because the principles of *Alleyne* apply in First Step Act cases, Judge Plunkett's factual findings at sentencing no longer support mandatory life imprisonment pursuant to § 848(b). Therefore, this Court may impose a sentence of time served, and should do so for the reasons further detailed below.

### IV. The Court should impose a reduced sentence in consideration of Mr. Ellis's strong family ties, post-sentencing rehabilitation, poor health, and other Section 3553(a) factors.

This Court should exercise its discretion and impose a reduced sentence of time served for several reasons. First, the First Step Act empowers courts to reduce sentences as part of an effort to advance equality and eliminate disparity. When Congress enacted the Fair Sentencing Act of 2010, it did so because it was long recognized that the penalties for crack cocaine were draconian

---

[6] *See also United States v. Evans*, No. 04-CR-464, Dckt. No. 2694, *5-6 (N.D. Ill. Oct. 18, 2019) (agreeing that *Alleyne* applies in First Step Act proceedings).

and had a disparate impact on the African-American community.[7] But the Fair Sentencing Act did not apply retroactively, which left intact many unjust sentences, like Mr. Ellis's, imposed from 1986 through 2010. The First Step Act was passed to eliminate these lingering disparities, providing a freestanding remedy for persons eligible for relief, while placing no limits on the extent to which a court may reduce a sentence.

Second, Mr. Ellis's time in prison has been especially difficult given his separation from family. When Mr. Ellis was taken into federal custody in 1995, he was 35 years old and the father of 7 children. Some of his children were still babies when he was arrested. Despite the circumstances, Mr. Ellis has tried to be a parent over the years through phone calls, letters, and visits. But those efforts remained challenging as Mr. Ellis was placed in different facilities across the country, frustrating his visits with family.

Third, Mr. Ellis has successfully rehabilitated himself during the nearly 25 years he has been in prison. Mr. Ellis's desire to return to the community and support his family has motivated the steps he has taken in prison to develop as an individual. He has taken numerous educational courses since the 1990s, such as Africans in America, Basic Piano, Music Theory Class, and GED Tutoring Training. Further, as Mr. Ellis noted in his motion under the First Step Act, he has provided GED tutoring, played the guitar for the prison choir, and assisted with holiday activates within the prison. *See* Dckt. No. 1004 at 35.

Finally, Mr. Ellis's health has declined significantly during his time in custody. He suffers from a number of serious health conditions, including, among others, chronic obstructive pulmonary disease (COPD), chronic kidney disease, hypertension, and congestive heart failure.

---

[7] *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012).

*See* Exh. 1 (Medical Discharge Summary); Exh. 2 (Consultation Report). Mr. Ellis was also diagnosed with smoldering myeloma, which "progressed to multiple myeloma," *see* Exh.1, a rare form of cancer that "occurs due to abnormal and uncontrolled growth of plasma cells in the bone marrow." *See* National Institute of Health Genetic and Rare Diseases Information Center, *Multiple Myeloma*, available at https://rarediseases.info.nih.gov/diseases/7108/multiple-myeloma (last visited May 11, 2020). Because of these serious health problems, Mr. Ellis is at heightened risk of contracting an extremely serious, and deadly form of Covid-19. This is especially concerning because Mr. Ellis is housed at a Bureau of Prisons facility in Butner, North Carolina where there is an active Covid-19 outbreak.

## V.   Conclusion

Mr. Ellis has been in federal custody since 1995, when he was 36 years old. Having reached the age of 60, Mr. Ellis is no longer the young man who committed the underlying offenses in this case. He recognizes and acknowledges the misguided decisions of his past and would like an opportunity to spend the remaining years of his life with family, particularly in light of his serious health problems. He has loving children, grandchildren, siblings, and a host of other family members that eagerly await his return. Upon his release, Mr. Ellis will live with his sister Gertrude Harris in Irving, Texas, along with her son.

This Court has the power to consider Mr. Ellis's forward progress, rehabilitation, and declining health, and impose a reduced sentence. For the reasons detailed above, this Court should exercise its discretion under Section 404 of the First Step Act and reduce Mr. Ellis's sentence to time served.

                                  Respectfully submitted,
                                  FEDERAL DEFENDER PROGRAM
                                  John Murphy
                                  Executive Director

                                  By: */s/ Santino Coleman*
                                          Santino Coleman

**CERTIFICATE OF SERVICE**

The undersigned, <u>Santino Coleman</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

<u>MR. ELLIS'S SUPPLEMENTAL REPLY IN SUPPORT OF
A REDUCTION UNDER SECTION 404 OF THE FIRST STEP ACT</u>

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>May 11, 2020</u>, to counsel/parties that are non-ECF filers.

> FEDERAL DEFENDER PROGRAM
> John F. Murphy
> Executive Director
>
> By: <u>*s/ Santino Coleman*</u>
>     Santino Coleman

SANTINO COLEMAN
Federal Defender Program
55 E. Monroe, Suite 2800
Chicago, Illinois 60603
(312) 621-8341

# EXHIBIT 1

Ellis, RussellOPUS (MR # D2724385) DOB: 08/10/1959

06939.424

BUH5B

### Discharge Summary by Curtiss, John Sutter, MD at 12/13/2019 1:34 PM

Author: Curtiss, John Sutter, MD   Service: Internal Medicine   Author Type: Physician
Filed: 12/18/2019 1:59 PM   Date of Service: 12/13/2019 1:34 PM   Note Type: Discharge Summary

Editor: Curtiss, John Sutter, MD (Physician)
Related Notes: Original Note by Curtiss, John Sutter, MD (Physician) filed at 12/18/2019 1:59 PM

 **DukeHealth**    12/6-12/18/19

# DUKE REGIONAL HOSPITAL

# Medicine Discharge Summary

| | |
|---|---|
| Admit Date: 12/6/2019<br>Discharge Date: 12/18/2019<br><br>Admitting Physician: Egya Nyameke Chinbuah, MD<br>Discharge Physician: John Curtiss, MD<br><br>Primary Care Provider: Center-Butner, Federal Medical, Phone 919-575-3900<br><br>Discharge Destination: Back to FMC Butner | **Admission Diagnoses:**<br>Shortness of breath [R06.02]<br>AKI (acute kidney injury) (CMS-HCC) [N17.9]<br>Syncope, unspecified syncope type [R55]<br>Acute on chronic congestive heart failure, unspecified heart failure type (CMS-HCC) [I50.9]<br>Heart failure of unknown type (CMS-HCC) [I50.9]<br><br>**Discharge Diagnoses:**<br>Principal Problem:<br>  Acute on chronic diastolic CHF (congestive heart failure) (CMS-HCC)<br>Active Problems:<br>  Acute kidney injury superimposed on chronic kidney disease (CMS-HCC)<br>  History of GI bleed<br>  Smoldering myeloma (CMS-HCC)<br>  Left cervical lymphadenopathy<br>  BRBPR (bright red blood per rectum)<br>  Anemia<br>  Constipation<br>  Cervical lymphadenopathy<br>Resolved Problems:<br>  * No resolved hospital problems. * |

**Results Pending at Discharge:**
Results from abdominal fat pad biopsy and FISH myeloma panel still pending
*Please see phone numbers at end of this summary for lab contact information.*

**Anticipatory Guidance (items to address, including key med changes):**
-Patient needs to continue aggressive diuresis (see hospital course below)
-Patient needs to follow up with his heme-onc MD at Butner as his smoldering myeloma has now progressed to multiple myeloma, and he needs to start on treatment for this

**Recommended Follow-up Studies:** Trend BMP and monitor potassium while on aggressive diuresis

**Follow-up/Care Transition Plan:**
**Future Appointments**

| Date | Time | Provider | Department | Center |
|---|---|---|---|---|
| 1/21/2020 | 1:00 PM | Khouri, Michel Georges, MD | 2F/2G CARD | Duke Clinic |

Non-Duke Provider Follow-up: Patient to d/c back to FMC Butner

**Allergies/Intolerances:**
Allergies

| Allergen | Reactions |
|---|---|
| • Asprin Ec Low Dose [Aspirin] | Vomiting |
| • Onion *Severe* | Vomiting |

**New Adverse Drug Events:** none

**Medications:**
**Current Discharge Medication List**

## START taking these medications

| | Details |
|---|---|
| **atorvastatin (LIPITOR) 80 MG tablet** | Take 1 tablet (80 mg total) by mouth once daily<br>Qty: 30 tablet, Refills: 0 |
| **calcium carbonate (TUMS) 200 mg calcium (500 mg) chewable tablet** | Take 1 tablet (500 mg of salt total) by mouth 3 (three) times daily as needed for Heartburn<br>Refills: 0 |
| **carboxymethylcellulose (REFRESH PLUS) 0.5 % ophthalmic solution** | Place 1 drop into both eyes 3 (three) times daily as needed<br>Refills: 0 |
| **diclofenac (VOLTAREN) 1 % topical gel** | Apply 2 g topically 4 (four) times daily as needed (Pain)<br>Qty: 100 g, Refills: 0 |
| **FUROsemide (LASIX) 80 MG tablet** | Take 2 tablets (160 mg total) by mouth 2 (two) times daily<br>Qty: 30 tablet, Refills: 0 |

# EXHIBIT 2

## CONSULTATION REPORT

**U.S. DEPARTMENT OF JUSTICE**     **FEDERAL BUREAU OF PRISONS**

| Name: Ellis, Russell<br>Reg. #: 06939-424<br>DOB: 08/10/1959 | Referred By: BUTNER FCI<br>Attending: COOPERBERG, CHARLES |
|---|---|
| CHIEF COMPLAINT: CKD. | RTF |
| Date of Visit: 12/06/2019 | Dictation Received: 12/06/2019 | Dictation Transcribed: 12/06/2019 |

**Sensitive but Unclassified**

### CONSULTATION

**HISTORY OF PRESENT ILLNESS:** The patient is a 60-year-old black male with COPD, CHF, myeloma, and progressive CKD versus acute on chronic renal failure with creatinines that were 1.34 and 1.55 in May, 1.62 and 1.78 in July, 2.11 in August, 1.63-2.1 in September, 2.04 in October, 2.22 in 11/01/2019, 2.36 in 11/2015, 2.5 in 11/26, and most recently yesterday 2.65 with a calcium of 8.5, bicarb 25, potassium 3.6. He has an M spike in his urine and has seen oncology with a diagnosis of myeloma. He also reports progressive shortness of breath and was told to stop his p.o. Lasix and was given IV Lasix yesterday.

**ALLERGIES:** He has allergies to ASPIRIN and ONIONS.

**MEDICATIONS:** Tylenol p.r.n., vitamin B12 injections, furosemide 60 per day in the morning, and 40 in the evening that was stopped, hydrochlorothiazide 25 per day, nitroglycerin sublingual p.r.n., and omeprazole 20 per day. He does report that he had been having progressive edema since arriving here and had previously been admitted for congestive heart failure and IV diuretics. Cardiology consult is pending.

**PHYSICAL EXAMINATION:** Reveals a debilitated, short of breath, middle-aged black male in poor general physical condition. Alert and oriented, in mild distress. Heart: Regular rate and rhythm. S1, S2. Lungs with bibasilar crackles. He has scrotal edema and pitting lower extremity edema. Vital Signs: Respirations 16, weight 221.6 pounds, blood pressure 103/68, pulse 72, temperature 97.6.

**IMPRESSION:** Acute on chronic renal failure, likely due to a combination of CHF and myeloma.

**PLAN:** We would suggest giving more and higher dose IV Lasix, possibly with p.o. metolazone versus admitting to the hospital for ongoing IV diuresis. He also needs firm diagnosis of his myeloma and treatment of his myeloma. He should have early followup here if he does not get admitted in one month. Thank you this interesting consult.

Signature:
    Charles Cooperberg, MD

CC
*Electronically Signed 12/10/2019 10:37*

*Job No: 107240*